UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                   CIVIL NO. 21-0056

**VERSUS**                                                                  SECTION: T(2)

**GREAT LAKES DREDGE & DOCK
COMPANY, LLC**

### ORDER

Before the Court is the question of restitution. Pursuant to this Court's February 10, 2022 Order, the Defendant Great Lakes Dredge & Dock Company, LLC ("Great Lakes") and the Government filed briefing on the issue.[1] For the following reasons, the Court declines to order restitution in this matter.

### BACKGROUND

Last year, Great Lakes Dredge & Dock Company, LLC ("Great Lakes") pled guilty to "caus[ing] to be discharged a harmful quantity of oil" into waters near the Chenier Ronquille barrier island in Louisiana.[2] After being hired to perform remedial work near the island, Great Lakes subcontracted with Shallow Water Equipment ("Shallow Water") to provide tools and labor for the project.[3] In the course of the project, an oil pipeline owned by Harvest Pipeline Company ("Harvest") was struck and ruptured.[4] The resulting oil spill led to a United States Coast Guard cleanup effort, a multi-party civil suit, and a criminal charge against Great Lakes.[5] Now, following settlement of the civil suit, Great Lakes and the Government disagree over the details of Great

---

[1] R. Docs. 27, 38.
[2] R. Doc. 1 at 1; R. Doc. 38 at 1-2. Great Lakes pled guilty to a misdemeanor violation of the Clean Water Act, 33 U.S.C. §§ 1319(c)(1)(A) and 1321(b)(3).
[3] R. Doc. 38 at 1.
[4] *Id.* at 15; R. Doc. 27 at 1.
[5] *See Harvest Pipeline Company, et al v. Great Lakes Dredge & Dock Company, et al.*, 16-cv-16605 (E.D. La.). The United States also charged James Tassin, a driver for Shallow Water Equipment. *United States v. James Tassin*, 21-cr-8 (E.D. La).

Lakes's guilty plea. Specifically, the two dispute whether an order of restitution should be entered and, if so, in what amount.

Great Lakes contends the Court should decline to order restitution for two reasons.[6] First, Great Lakes argues restitution is unnecessary because the possible victims, the United States and Harvest, "have been made whole" through cleanup fees and a settlement agreement.[7] Great Lakes maintains "the United States has received its entire cleanup costs and damages, and Harvest has received contribution from Great Lakes" for its part in the spill.[8] Furthermore, Great Lakes notes Harvest "waived any claim for restitution" in a civil settlement.[9] Second, Great Lakes argues creating a restitution order would "complicate and prolong the sentencing process to a degree that well outweighs the need to provide restitution" to any victim.[10] Great Lakes contends restitution would necessarily require "relitigating the parties' respective responsibility" and dissecting the Chenier Ronquille project, including its cause and costs.[11]

In response, the Government raises two arguments.[12] First, the Government argues any civil settlement, including a "release" or waiver of restitution, does not bind this Court.[13] Second, the Government contends any "complicating" questions, including Harvest's waiver, uncertain damages, and unsettled causation, are resolved by the restitution statutes.[14] According to the Government, for an uncooperative victim, this Court may assign restitution payments to a victim's fund.[15] As for causation, Great Lakes can be held joint and severally liable with any other

---

[6] R. Doc. 27.
[7] *Id.* at 4-5.
[8] *Id.* at 2.
[9] *Id.* at 6.
[10] *Id.* at 8.
[11] *Id.* at 8-17.
[12] R. Doc. 38.
[13] *Id.* at 24-27.
[14] *Id.* at 21-25.
[15] *Id.* at 20-24.

wrongdoer.[16] Furthermore, the Government maintains "the issues of causation and losses do not need to be fully relitigated" because Great Lakes admitted fault in its plea agreement and Harvest's costs can be verified by internal documents.[17] Ultimately, the Government contends that, because Harvest's losses exceed $6,000,000, Great Lakes's $4,800,000 settlement has not made Harvest "whole."[18]

## LAW & ANALYSIS

Under 18 U.S.C. § 3663, a "court may… order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." Ultimately, district courts may, in their discretion, award restitution and, in doing so, may consider the victim's losses and the defendant's resources.[19] A victim must be a person or entity "directly and proximately harmed" by the "offense for which restitution may be ordered."[20] If a court decides to order restitution, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."[21] If a victim has already received compensatory damages, an award of restitution must be reduced accordingly.[22]

However, under § 3663(a)(1)(B)(ii), if a court determines "fashioning" a restitution order would "complicat[e] and prolong[] the sentencing process" beyond any victim's need for restitution, "the court may decline to make such an order."[23] In doing so, a district court may consider factors beyond the victim's losses and the defendant's financial resources.[24] Specifically,

---

[16] *Id.* at 24.
[17] *Id.* at 20-24, 29.
[18] *Id.*
[19] 18 U.S.C. § 3663.
[20] 18 U.S.C. 3663(a)(2).
[21] 18 USC § 3664.
[22] *Id.*
[23] *Id.*
[24] "The district court made no findings about Copple's ability to pay the restitution…We will therefore remand for the district court to make the factual findings necessary to support such order of restitution as it may make." *United States v. Copple*, 24 F.3d 535, 550 (3d Cir. 1994).

3

a court may forego restitution if "determining complex issues of fact related to the cause or amount of the victim's losses" would unnecessarily stall the sentencing process.[25] Courts have interpreted § 3663(a)(1)(B)(ii) as requiring a "balancing test" that "weigh[s] the need to provide restitution to a victim against the burden on the sentencing process posed by determining complex issues of fact."[26] In such an analysis, a court may take into consideration a victim's "other available legal remedies."[27] Ultimately, the statute seeks to "prevent sentencing hearings from becoming prolonged and complicated trials on the question of damages owed the victim" and ensure "sentencing courts [do] not become embroiled in intricate issues of proof."[28]

After reviewing the parties' filings and the applicable law, the Court finds crafting an order of restitution would unduly burden the sentencing process beyond the need to compensate any victim. This case centers around a complex, but contained, ecological disaster spanning three lawsuits. Six years ago, the National Oceanic and Atmospheric Administration hired Great Lakes to perform remedial work near the Chenier Ronquille barrier island. For equipment and manpower, Great Lakes hired Shallow Water. Some time later, a Shallow Water operator struck an oil pipeline owned by Harvest, causing an unquantified amount of oil to spill into Louisiana waters. As a result, the Coast Guard, with Harvest covering the costs, undertook an expansive cleanup effort. Consequently, Great Lakes, Shallow Water, and Harvest sued and counter-sued one another, disputing the cause and cost of the spill.[29] Additionally, due to the spill, the United States brought

---

[25] U.S.S.G. 8B1.1. Additionally, because restitution must be tied to the defendant's conduct, a district court must consider "how the amount of restitution imposed relates to any loss caused by the conduct underlying the offenses for which defendant was convicted." *United States v. Atl. States Cast Iron Pipe Co*., 612 F. Supp. 2d 453, 500 (D.N.J. 2009) (citing *United States v. Logar*, 975 F.2d 958, 961 (3d Cir. 1992)).
[26] *In re Brown*, 932 F. 3d 162, 173 (4th Cir. 2019) (citations omitted) (quoting *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014)).
[27] *Id.*
[28] *Id.* (citations omitted).
[29] Generally, Great Lakes contended Harvest was at fault due to a failure to submerge the broken pipeline. On the other hand, Harvest argued Great Lakes was at fault due to the actions of its agents.

4

criminal charges against James Tassin, the Shallow Water operator, and Great Lakes, a publicly traded company. Both Tassin and Great Lakes pled guilty.

Now, the Government asks this Court to fashion an order of restitution in favor of Harvest. Generally, the Government maintains restitution will be straightforward and any cost or causation questions can be swiftly resolved. This Court disagrees. The question of restitution is only before this Court after two sophisticated parties, Great Lakes and Harvest, struck a deal with the advice of experienced lawyers and under the judicial supervision of a federal magistrate judge. In this dispute alone, the parties have filed sixty-two pages of briefing and nearly three hundred pages of exhibits. However, the complexity of this matter is not limited solely to its posture.

The Court finds at least three substantive issues warrant application of 18 U.S.C. § 3663(a)(1)(B)(ii). First, it remains undetermined what caused Harvest's losses. The Government contends that, because Great Lakes pled guilty, "there is [] no question of fault or causation."[30] However, Great Lakes did not admit full responsibility for the Chenier Ronquille incident.[31] Even if Great Lakes had, restitution stems exclusively from the "loss[es] caused by the conduct underlying the offenses for which [the] defendant was convicted."[32] Therefore, ordering restitution would require this Court to ferret out all potential causes of the spill and assign Great Lakes a percentage of liability proportionate to those losses that were caused by its actions.[33] Meanwhile,

---

[30] R. Doc. 38 at 30.
[31] Great Lakes admitted it "failed to supervise Tassin properly and exercise reasonable care under the circumstances, which was a proximate cause of the pipeline rupture." R. Doc. 18 at 4. Consequently, Great Lakes admitted to only one potential cause of the rupture, not all conceivable contributing factors.
[32] *Cast Iron*, 612 F. Supp. 2d at 500 (citing *United States v. Logar*, 975 F.2d 958, 961 (3d Cir. 1992)).
[33] Ultimately, the parties' civil settlement and Mr. Tassin's guilty plea indicate that fault may not be tied to a singular actor. Beyond that, exploring the Chenier Ronquille incident would be a cumbersome and lengthy ordeal.

the parties took five years to settle upon a provisional fault allocation. Ultimately, a liability analysis alone would lead the Court well beyond the scope of sentencing.[34]

Second, Harvest's actual losses are unconfirmed. The Government, relying on an internal spreadsheet "prepared for the purposes of [Harvest's] civil litigation against Great Lakes," contends Harvest's losses exceed $6,000,000.00.[35] However, the Government's spreadsheet, and Great Lakes's civil settlement, cannot be taken at face value.[36] To fashion an order of restitution, this Court would have to scrutinize the Government's proffered numbers.[37] Specifically, as restitution must be tied to the "loss caused by the [defendant's] conduct," the Court would be obligated to dissect every cent of Harvest's alleged losses to confirm their applicability to Great Lakes's actions.[38] In doing so, the Court would have to parse through the entire Chenier Ronquille incident by way of testimony, documentation, receipts, and other evidence.[39] Again, this complex question of fact alone would exceed the scope of sentencing.

Third, Harvest has been fairly compensated for its losses. As noted, a court may forego restitution when the "complication" of sentencing outweighs "the need to provide restitution to any victims."[40] Under § 3663(a)(1)(B)(ii), a court must utilize a "balancing test" that "weigh[s]

---

[34] Furthermore, to determine liability, the Court would necessarily have to explore the intricate regulatory framework that governs the web of pipelines near the Chenier Ronquille island. Examining both the complex factual question of fault and the legal regime surrounding that question would excessively burden the sentencing process.
[35] R. Doc. 38 at 18.
[36] *See United States v. Antonucci*, 667 F. App'x 121, 123–24 (5th Cir. 2016) (vacating a restitution order that relied exclusively on an erroneous calculation and a lone loss report); *United States v. Sheinbaum*, 136 F. 3d 443 (5th Cir. 1998) ("We will not simply assume that the monetary value of the consideration and the bundle of rights conferred upon the victim by the settlement equaled the monetary value of the loss sustained by the victim. If that were the case, then § 3664 would absolutely bar restitution whenever a civil settlement was reached between the defendant and the victim, rather than providing an offset for the value of the settlement.")
[37] Under 18 U.S.C. § 3664, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence" with the Government bearing the burden of proof.
[38] *Cast Iron*, 612 F. Supp. 2d at 500.
[39] "Based upon the [parties'] submissions and supporting financial documents, the Court finds that any determination of the putative victims' losses in this case would entail resolution of complex issues of fact related to the cause and amount of their losses." *United States v. Petal*, 613 F. Supp. 2d 811, 812 (E.D. La. 2009).
[40] 18 U.S.C. § 3663(a)(1)(B)(ii).

the need to provide restitution to a victim against the burden on the sentencing process posed by determining complex issues of fact."[41] Notably, in doing so, the Court may consider a victim's "other available legal remedies."[42] Here, Harvest's need for compensation is minimal. Great Lakes paid out nearly $5,000,000.00 in an arms-length transaction guided by counsel and with judicial oversight. Ultimately, Harvest sought recourse through "other available legal remedies" beyond restitution and, in doing so, recovered a large portion of its alleged losses. This Court will not second-guess Harvest's business decision. Accordingly, because complex questions of cost and causation would complicate and prolong Great Lakes's sentencing beyond Harvest's need for restitution, the Court declines to enter an order of restitution in this matter.

This Court does not deny the Government's request lightly. As the Fifth Circuit noted in *United States v. Dupre*, the decision to forego restitution should be done "infrequently and only when considering difficult issues of causation or speculative loss."[43] Here, "[t]his court cannot resolve [the Government's] request for restitution on the basis of the evidence submitted."[44] Instead, to do so, "[m]any witnesses would be required to testify to numerous unresolved causation issues in order to show that [Harvest] was 'directly and proximately harmed'" by Great Lake's conduct.[45] There is "also complicated damages issues."[46] As restitution must be limited to the losses "caused by the specific conduct" of the defendant, the Government would have to "account for each dollar of the [$6,000,000.00] figure it has presented as damages."[47] "Considering the state

---

[41] *Brown*, 932 F. 3d at 173 (citations omitted) (quoting *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014)).
[42] *Id.*
[43] *See* 117 F. 3d 810, 824 (5th Cir. 1997). That being said, "the language of § 3663(a) does not limit its application only to those instances involving causation or loss." *Id.* Other considerations may include the "defendant's financial resources" and the victim's need for compensation. 18 U.S.C. § 3663.
[44] *Tuma*, 2012 WL 6087068, at *2.
[45] *Id.* "Establishing this fact would not only entail testimony of [the parties], but also the relevant governmental authorities" like the Environmental Protection Agency. *Id.*
[46] *Id.*
[47] *Id.* This Court's decision finds support in Fifth Circuit precedent, too. In *In re Allen*, the Fifth Circuit upheld a district court's refusal to "fashion[] a restitution order for lifetime medical monitoring outweighed the need for such

7

of the evidence and the time already devoted to evaluating restitution, determining restitution would unduly complicate and prolong the sentencing process" while unnecessarily stalling an end to the Chenier Ronquille incident.[48] In any event, the restitution amount ultimately determined by this Court would likely not vary significantly from the number Harvest and Great Lakes fairly agreed upon.

## CONCLUSION

For the foregoing reasons, the Court declines to enter an order of restitution in this matter under 18 U.S.C. § 3663(a)(1)(B)(ii).

New Orleans, Louisiana, this 10th day of June, 2022.

_____
Hon.Greg Gerard Guidry
United States District Judge

---

restitution." 568 F. App'x 314, 315-16 (5th Cir. 2014). In *Allen*, a group of alleged victims sought various forms of restitution, including lifetime medical costs, for a chemical exposure. The Fifth Circuit found that, because the district court considered victim statements, oral testimony, and "extensive" post-hearing briefing, its denial of restitution was well-reasoned and supported. *Id.* Here, after oral argument, the Court carefully reviewed, in total, nearly four hundred pages of filings before reaching its decision. Additionally, the Court's decision rests on 18 U.S.C. § 3663 itself. Congress did not expect "that a sentencing judge would adjudicate, in the course of the court's sentencing proceeding, all civil claims against a criminal defendant arising from conduct related to the offense." *Tuma*, 2012 WL 6087068, at *1 (quoting *United States v. Kones*, 77 F. 3d 66, 69 (3d Cir. 1996). Ultimately, the statute is intended to keep out exactly the issues at play here, namely complicated "fault and causation issues…that cannot be resolved with the information otherwise generated in the course of the criminal proceedings on the indictment." *Id.* In the end, § 3663(a)(1)(B)(ii) is intended "to prevent sentencing hearings from becoming prolonged and complicated trials on the question of damages owed the victim." *Id.* Therefore, in accordance with case law and the restitution statutes themselves, the Court will not unnecessarily delay Great Lakes's sentencing.
[48] *Id.*